﻿Citation Nr: 18107545
Decision Date: 06/04/18 Archive Date: 06/02/18

DOCKET NO. 14-38 022
DATE: June 4, 2018
ORDER
Entitlement to an earlier effective date prior to June 30, 2011, for the grant of service connection for peripheral artery disease, right leg, is denied.
Entitlement to an earlier effective date prior to June 30, 2011, for the grant of service connection for peripheral artery disease, left leg, is denied.
REMANDED
Entitlement to an increased initial rating in excess of 40 percent for peripheral artery disease, right leg, is remanded.
Entitlement to an increased initial rating in excess of 40 percent for peripheral artery disease, left leg, is remanded.
Entitlement to an increased rating in excess of 20 percent for diabetes mellitus, type II, with diabetic retinopathy, impotence, onychomycosis, and history of renal insufficiency is remanded.
Entitlement to an increased rating in excess of 20 percent for right lower extremity peripheral neuropathy is remanded.
Entitlement to an increased rating in excess of 20 percent for left lower extremity peripheral neuropathy is remanded.
Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.
Entitlement to an earlier effective date, prior to June 30, 2011, for basic eligibility to Dependents' Educational Assistance (DEA) under Chapter 35, Title 38, United States Code, is remanded.
REFERRED
The issues of alleged clear and unmistakable error (CUE) in May 2001 and October 2004 rating decisions regarding the Veteran’s service connected post-traumatic stress disorder, as cited in correspondence from the Veteran’s attorney dated September 11, 2013 and August 12, 2014; and claims to reopen for service connection for right leg arthritis, degenerative joint disease of the right and left shoulders, degenerative joint disease of the right and left knees, high cholesterol, hypertension, a stomach condition, and a rectum condition have been raised by the record in the May 2, 2013 Notice of Disagreement and a July 19, 2013 internal Veterans Appeals Control and Locator System (VACOLS) document, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b). 
FINDINGS OF FACT
1. June 30, 2011 is the earliest date that the Veteran filed a claim of entitlement for service connection for peripheral artery disease, right leg.
2. A May 2012 rating decision granted service connection for the Veteran’s right leg peripheral artery disease, with an effective date of June 30, 2011. 
3. June 30, 2011 is the earliest date that the Veteran filed a claim of entitlement for service connection for peripheral artery disease, left leg.
4. A May 2012 rating decision granted service connection for the Veteran’s left leg peripheral artery disease, with an effective date of June 30, 2011.
CONCLUSIONS OF LAW
1. The requirements for an effective date earlier than June 30, 2011 for the grant of entitlement to service connection for peripheral artery disease, right leg, have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2017).
2. The requirements for an effective date earlier than June 30, 2011 for the grant of entitlement to service connection for peripheral artery disease, left leg, have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from April 1969 to January 1972.
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a rating decision dated May 2012, issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. 
When a Veteran files a claim for an increased rating, he is presumed to be seeking the maximum benefit under any applicable theory, including TDIU. See generally Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001); Rice v. Shinseki, 22 Vet. App. 447 (2009). In light of this principle, entitlement to special monthly compensation (SMC) has been found to be an inferable issue anytime a veteran is requesting increased benefits. Akles v. Derwinski, 1 Vet. App. 118 (1991). 
Here, the record indicates the RO considered the possibility of TDIU to be moot because the Veteran is already in receipt of accumulated 100 percent schedular ratings, effective from June 30, 2011. However, where a 100 percent is in effect for a particular disability or group of disabilities, a later grant of service connection for another disability may result in a separate rating warranting assignment of special monthly compensation. The Board also notes an informal claim for TDIU pursuant to written correspondence dated September 11, 2013 from the Veteran’s representative. In addition, the Veteran reached the schedular eligibility threshold for TDIU effective from September 3, 2004. See 38 C.F.R. § 4.16(a). In this case, if so granted, a TDIU grant prior to June 30, 2011 would also positively affect one of the other claimed issues on this appeal, that of earlier eligibility for educational benefits under Chapter 35, Title 38, United States Code. See 38 C.F.R. § 21.3021. Thus, TDIU may be considered again, even if already in effect for other disabilities or groups of disabilities. See Bradley v. Peake, 22 Vet. App. 280 (2008). See also AB v. Brown, 6 Vet. App. 35, 38 (1993) (presuming that a claimant is seeking the maximum benefits allowed by law and regulation); 38 C.F.R. § 3.103(a) (noting VA’s obligation to “render a decision which grants every benefit that can be supported in law.”)
The Veteran currently receives SMC K-1 under 38 U.S.C. § 1114(k) and 38 C.F.R. § 3.350(a) since April 30, 2003. There is no lay or medical evidence that the Veteran is housebound in fact, requires aid and attendance, or that his disabilities result in loss of use of a limb, blindness or deafness. 38 U.S.C. §§ 1114(s), (l), (k); 38 C.F.R. § 3.350(a), (b), (i). As such, the Board will not infer the issue of further entitlement to SMC beyond that discussed above at this time.
As part of his substantive appeal, the Veteran requested a hearing before a Veterans Law Judge. In correspondence dated January 23, 2018, and again on February 7, 2018, the Veteran was properly notified of the date, time and location of the scheduled videoconference hearing set for February 20, 2018, but failed to report for the hearing without explanation or any request to reschedule. The hearing request is therefore considered withdrawn. 38 C.F.R. § 20.704(d).
Veterans Claims Assistance Act of 2000 (VCAA)
The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). 
The Veteran in this case has not referred to any deficiencies in either the duties to notify or assist; therefore, the Board may proceed to the merits of the claim. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015, cert. denied, U.S.C. Oct.3, 2016) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board….to search the record and address procedural arguments when the [appellant] fails to raise them before the Board”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to an appellant’s failure to raise a duty to assist argument before the Board).
The Board has reviewed all of the evidence in the Veteran’s claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board’s analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-130 (2000).
Earlier Effective Date for Grant of Service Connection for Peripheral Artery Disease
The assignment of effective dates of awards is generally governed by 38 U.S.C. § 5110 and 38 C.F.R. § 3.400. 38 U.S.C. § 5110(a) provides that “the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.” 
Similarly, 38 C.F.R. § 3.400(b)(2) provides that for disability compensation for direct service connection, the effective date is the “[d]ay following separation from active service or date entitlement arose if claim is received within 1 year after separation from service; otherwise, date of receipt of claim, or date entitlement arose, whichever is later.” 
The essential requirements of a claim are “(1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing.” Brokowski v. Shinseki, 23 Vet. App. 79, 84 (2009); see also 38 C.F.R. §§ 3.155(b) (explaining how to file a claim), 3.1(p) (2017) (defining “claim” as a “written communication requesting a determination of entitlement or evidencing a belief in entitlement, to a specific benefit”). Where no intent to apply for a specific benefit is discernable, “a claim for entitlement to such benefit [ ] has not been reasonably raised.” Criswell v. Nicholson, 20 Vet. App 501, 504 (2006). VA is required to read sympathetically a veteran’s allegations in all benefits claims and apply all relevant laws and regulations. Szemraj v. Principi, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (requiring the Secretary to give a sympathetic reading to a veteran’s filings).
The Veteran filed a claim specifically for peripheral artery disease, both right leg and left leg, on June 30, 2011, per a phone record document by VA and later formalized as a claim for service connection. This claim was granted in an May 2012 rating decision, with an effective date of June 30, 2011, the date of the Veteran’s initial claim for his peripheral artery disease.
At no point prior to June 30, 2011 did VA receive any claim for service connection for peripheral artery disease, nor did VA receive any submission or other communication from the Veteran that could be construed as such a claim.
The Board acknowledges the arguments advanced by the Veteran and his representative, specifically in written correspondence from the Veteran’s attorney dated September 11, 2013, August 12, 2014, and the Notice of Disagreement dated May 2, 2013. However, the law regarding effective dates is clear: date of receipt of claim or date entitlement arose, whichever is later. 38 C.F.R. § 3.400(b)(2).
Under these facts, the earliest effective date the Veteran is entitled to for his peripheral artery disease disability is the date of his original claim, June 30, 2011. Accordingly, the Veteran’s claim for an earlier effective date for peripheral artery disease, right leg and left leg, must be denied as a matter of law.
REASONS FOR REMAND
The Veteran is claiming increased ratings for his service-connected peripheral artery disease, right and left leg; peripheral neuropathy, right and left lower extremities; and for his diabetes mellitus, type II, asserting that his symptoms have worsened since the original grants of service connection. VA must provide an examination that is adequate for rating purposes. Barr v. Nicholson, 21 Vet. App. 303 (2007).
Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). When the evidence of record does not reflect the current state of the claimant’s disability, a VA examination must be conducted. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a).
The Veteran’s disabilities described above have not been evaluated in a VA examination since August and October 2011; accordingly, further VA examinations are warranted. A new examination is appropriate when there is an assertion (and indication) of an increase in severity since the last examination. See 38 C.F.R. § 3.159; see also Palczewski v. Nicholson, 21 Vet. App. 174, 181 (2007); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997); VAOPGCPREC 11-95 (1995).
The Veteran is cautioned that a failure to report for examination may result in the denial of his claim. 38 C.F.R. § 3.655. Any private treatment appointments or records, be they past, present, or future, are not relevant to his duty to appear for examination and assist VA in developing his claim; the duty to assist is not a one way street. 38 C.F.R. § 3.159(c)(1)(i), (2)(i); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991).
The Veteran has claimed entitlement to a TDIU, and also seeks an earlier effective date for the eligibility for Dependents’ Educational Assistance (DEA) benefits under Chapter 35, Title 38 United States Code. Because the outcome of the TDIU adjudication could materially affect the Veteran’s eligibility date for his DEA earlier effective date claim, the DEA claim is inextricably intertwined with the remanded TDIU claim and therefore must be remanded as well. Harris v. Derwinski, 1 Vet. App. 180 (1991) (two issues are “inextricably intertwined” when they are so closely tied together that a final Board decision on one issue cannot be rendered until the other issue has been considered).
The matters are REMANDED for the following action:
1. Obtain any pertinent outstanding VA treatment records and associate them with claims file. 
Contact the Veteran and request he submit or authorize for release any further private treatment records relevant to his claimed peripheral artery disease, peripheral neuropathy, and diabetes disabilities.
All actions to obtain the records should be documented. If the records cannot be located or do not exist, the Veteran should be notified and given opportunity to provide them.
2. After completion of the above, schedule the Veteran for VA examinations to determine the current nature and severity of his service-connected peripheral artery disease, peripheral neuropathy, and diabetes disabilities. The claims folder must be made available to the examiner in conjunction with the examination. Any appropriate evaluations, studies, and testing deemed necessary by the examiner should be conducted.
If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.
3. Thereafter, readjudicate the issues on appeal, to include the TDIU claim and the earlier effective date claim for DEA. If the determination remains unfavorable to the Veteran, he and his representative should be furnished a supplemental statement of the case which addresses all evidence associated with the claims file since the last statement of the case. The Veteran and his representative should be afforded the applicable time period to respond.
The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

 (CONTINUED ON NEXT PAGE)

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans’ Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).
 
MICHAEL A. PAPPAS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD J. Setter, Associate Counsel